UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA RICHARDSON,<br><br>               Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No. 1:20-cv-01765-BAK (EPG)<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 26) |

    This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

    Plaintiff presents the following three issues: (1) The ALJ failed to follow the regulations in rejecting the opinion from Dr. Ehteshami without setting forth specific, legitimate reasons supported by the evidence of record; (2) The ALJ failed to offer any convincing reason for rejecting Plaintiff's subjective complaints; and (3) The ALJ failed to properly evaluate the severity and limiting effects of Plaintiff's migraine headaches, cardiovascular issues, and diabetes

with peripheral neuropathy rendering the RFC unsupported because it fails to consider limitations from all of Plaintiff's medically determinable impairments. (ECF No. 26, p. 3).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

**I.     ANALYSIS**

      **A.     Dr. Ehteshami's Opinion**

            **1.     Standards of Review**

Plaintiff argues that the ALJ committed harmful error by failing to give specific and legitimate reasons, supported by substantial evidence, for discounting the opinion of Dr. Ehteshami, a physical consultative examiner, who offered an opinion regarding Plaintiff's abilities in connection with an eight-hour workday. (ECF No. 26, p. 18); (*see* A.R. 653).

As an initial matter, the parties dispute the standards by which this Court must review the ALJ's decision. The parties agree that this claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.[1] 20 C.F.R. §§ 404.1520c, 416.920c; (ECF No. 26, p. 18; ECF No. 29, pp. 8-9). The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

However, the parties disagree as to whether these new regulations displace prior case law that gave deference to certain medical opinions and that addressed the specificity by which an ALJ was required to articulate his or her reasoning. The case authority preceding the new regulations requires an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (internal citations omitted)) ("To reject [the] uncontradicted

---

[1] Plaintiff applied for disability benefits on December 20, 2017. (A.R. 10).

opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."). Plaintiff argues that these standards still govern; Defendant argues that they have been displaced. (*See* ECF No. 26, p. 18; ECF No. 29, p. 9).

Since the conclusion of briefing in this matter, the Ninth Circuit has decided the issue:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *6 (9th Cir. Apr. 22, 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at *1. "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 2022 WL 1195334, at *6. "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' *Id.* § 404.1520c(c)(1). Consistency means the extent to which a

medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).[2] *Id.*

Accordingly, the Court will review Plaintiff's first issue under the above standards.

### 2. Analysis

Turning to the merits, the ALJ concluded that Dr. Ehteshami's opinion was unpersuasive for the following reasons:

> The undersigned considered the physical consultative examination opinion of Dr. Shahram Ehteshami MD and does not find it overall persuasive. (8F). Dr. Ehteshami found the claimant could lift and/or carry 40 pounds occasionally and 25 pounds frequently. He found she could stand/walk five hours in an eight-hour workday and could sit for six hours in an eight-hour workday. The claimant did not report she was laying down up to three hours a day to elevate her swollen legs/feet or to alleviate back pain. Dr. Ehteshami found the claimant could climb "4 steps," stoop, and crouch frequently. He found she could squat occasionally. He found she could frequently grasp, hold, feel, and manipulate. He found she could reach in any direction frequently. He found she could work without any assistive device other than her contact lenses for day light driving. He found she could care for herself, travel, bank, and go to school. This opinion is mostly inconsistent with his examination findings that showed the claimant with normal range of motion at the cervical, dorsolumbar, bilateral hips, knees, and ankles. (8F). She had no signs of edema, joint swelling, or muscle atrophy. She had 5/5 motor strength in all four limbs. (8F/2). She had negative straight leg raise on the right to 90 degrees but positive on the left to 70 degrees. She had intact sensation to light touch, pinprick, and vibration in all four limbs. Her balance and coordination were normal. Her deep tendon reflexes were normal in all four limbs. Further, the claimant reported to Dr. Ehteshami she could take public transportation, and/or drive independently. This opinion is not consistent with the overall record of physical examination findings, stable diagnostic test results, and the claimant's reports of independent activities of daily living. However, the undersigned finds the combination of

---

[2] As the Ninth Circuit also noted, "The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 2022 WL 1195334, at *6 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Here, there is no argument that Dr. Ehteshami's opinion was found to be equally well-supported and consistent with the record as another but not exactly the same. Accordingly, the relationship factors are not at issue.

|   |   |
|---|---|
| 1 | impairments reasonably limit the claimant to the light level of exertion. Overall, the undersigned does not find this opinion persuasive. |

(A.R. 28).

The first reason given to discount Dr. Ehteshami's opinion is that it was unsupported by Dr. Ehteshami's own examination findings. (*Id.*). This reasoning invokes the supportability factor, which considers the relevant objective medical evidence and supporting explanations for a medical source opinion. The ALJ supported the discounting of Ehteshami's opinion by explaining the relevant objective medical findings that contradicted the opinion, *e.g.*, Plaintiff's "normal range of motion at the cervical, dorsolumbar, bilateral hips, knees, and ankles," the lack of "signs of edema, joint swelling, or muscle atrophy," her possessing "5/5 motor strength in all four limbs," her "intact sensation to light touch, pinprick, and vibration in all four limbs," and normal findings of "balance and coordination" and "deep tendon reflexes . . . in all four limbs." (A.R. 28) (citing A.R. 651-52). While Plaintiff accuses the ALJ of "cherry pick[ing]" favorable evidence and briefly points to other medical records that she deems supportive of Dr. Ehteshami's opinion, she offers no developed explanation of how such records render the ALJ's decision unreasonable. (ECF No. 26, p. 19); s*ee Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

The second reason identified by the ALJ to discount Dr. Ehteshami's opinion is that it "is not consistent with the overall record of physical examination findings, stable diagnostic test results, and the claimant's reports of independent activities of daily living." (A.R. 28). This reasoning invokes the consistency factor, which considers whether a medial opinion is consistent with other evidence from other medical sources. Although Plaintiff criticizes the ALJ for not identifying records to discount Dr. Ehteshami's opinion (ECF No. 26, p. 20), the Court concludes that the ALJ's earlier summation of the record in the opinion, which includes notations regarding the medical records that revealed normal findings and summaries of Plaintiff's daily activities, is sufficient under the circumstances for the Court to identify which evidence the ALJ deemed relevant. (*See* A.R. 19) (citing A.R. 304 (Plaintiff's self-reports of taking care of young children)); (A.R. 21) (citing A.R. 473-74 (documenting some normal cardiac findings)); (A.R. 22)

(citing A.R. 934 (noting no edema)). And ultimately, while Plaintiff points to other records that she contends are consistent with Dr. Ehteshami's opinion, the Court concludes that the records and explanation offered by the ALJ rationally support the ALJ's conclusion. (*See* ECF No. 26, p. 20).

For the above reasons, the Court concludes that the ALJ's decision to discount Dr. Ehteshami's opinion was supported by substantial evidence after consideration of the supportability and consistency factors.

### B. Subjective Testimony

Next, Plaintiff argues that the ALJ failed to offer any convincing reason for rejecting Plaintiff's subjective complaints. (ECF No. 26, p. 21).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 21). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's subjective complaint and the reasons for discounting

them as follows:

> In January 2018, the claimant wrote she was unable to work due to chronic daily migraines that caused her to sleep most of the day. (7E). She wrote she had daily fibromyalgia pain and pins and needs sensation that made walking difficult. Yet, she wrote she lived with her boyfriend/husband and three children. (7E/1). She reported to providers and testified she cared for two foster children from infancy to the present. (9E; 7F; Hearing Testimony). She and her boyfriend wrote she fed the children and changed their diapers. (7E; 9E). She wrote she was independent with her self-care needs including cleaning, laundry, and preparing simple meals. She wrote her boyfriend also assisted with the children and with household cleaning. She wrote she could drive to medical appointments and shopping for food. She wrote she could manage her own funds, a bank account, and could count change without noted assistance. She wrote she could not lift more than 15 pounds or walk more than a quarter of a mile. She wrote pain affected her ability to concentrate and she needs to review instructions.
>
> She wrote she has never been terminated from a job. Yet, she reported to the consultative examiners and at the hearing, she was "let go" from her job of over 20 years and felt mistreated after serving for so many years as "operations VP." (7F; 8F). She testified she was let go due to poor performance and absenteeism. She wrote she did not handle stress well but could handle changes in routine "ok." She wrote she did not use an assistive device to ambulate. However, at the hearing she testified she uses a cane but it was not prescribed.
>
> The claimant testified she has severe all over pain from her head to her hands and feet due to fibromyalgia, neuropathy, Raynaud's syndrome with bilateral hand deformities, and migraines. However, she stated migraines are substantially less now at about one to two per week due to medication use. This is supported by her reports to Dr. Labib in 2019 and 2020. (*See* 27F). The claimant stated she weighs 233 pounds and is 5'7". She stated diabetes is "under control" without medication. Yet, she stated she has to lay down during the day to elevate her feet because they "swell" even with compression stockings. She stated she can lay down for one to 1.5 hours at a time for a total of three hours a day.
>
> She testified she has fallen many times due to "no leg muscles" as recently as two weeks ago in the home. Treatment notes from April-May 2020 noted she had right (or left) lower leg cellulitis and was treated for infection. (33F/42-58). She reported this began after her "bird walked on her leg." (33F/58, 64). She also had weakness and tenderness with ambulation at the right hip. (33F/50-61). However, she had normal arterial and dorsalis pedis pulses, intact sensation to 10-g monofilament testing, and normal appearance of the bilateral feet. (33F/45). She had 2+ to 1+ edema at the right lower leg. Her appearance was normal versus "exhausted." During this period of healing, she was advised to elevate the leg "as much as possible" and "partial weightbearing." (Id.). She testified medications cause drowsiness, especially Abilify, diazepam, and baclofen. She stated she uses a CPAP machine but does not feel refreshed in the morning. She stated she does

> not need assistance getting out of bed. She stated she is going to restart physical therapy in July 2020. (*See* 33F/56). She stated her legs are very painful and it hurts to use the pedals when driving. She reported physical therapy was helpful with her leg pain and she wanted a repeat referral in 2020. (*See* 33F/69). She testified she also recently had emergency room treatment for another episode of possible deep vein thrombosis.
>
> Yet, she has cared for two foster children whom she has guardianship over since they were infants. She stated her boyfriends "helps" with them as well but he also has health issues. She stated the children's aunt also helps care for them on a daily basis but she did not mention such help in her 2018 Function Report. (*See* 7E). She stated she interacts with the children, prepares simple meals for them, and folds laundry. She stated she drives and goes shopping with assistance. She stated she has "ten bad days" per month since 2015 where she does not get out of bed and has no interaction with others. However, medication is helpful with respect to anxiety and depression. She stated she has treated with a psychologist and therapist for over three years. She stated she can get out of bed and interact "co-exist" with others.
>
> . . . .
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the overall record of observations and conservative treatment of all impairments. Further, they are inconsistent with her reports to providers that routine steroid injections and physical therapy were helpful in alleviating pain.
>
> Because of the claimant's combined impairments, the undersigned finds she is reasonably limited to work at the light level of exertion with additional postural limitations of occasional bending, squatting, and kneeling. Further, she should avoid climbing of ladders or scaffolds. She can frequently but not constantly handle and finger bilaterally due to upper extremity cervicalgia. She can occasionally use foot or leg controls based on physical examination findings of diminished sensation. However, based on her reports of ability to drive to maintain her independent activities of daily living, she is not further limited. Lastly, she should have no exposure to hazardous work areas or temperature extremes.
>
> However, the record does not support further limitations based on physical examination findings, stable diagnostic test results, and the claimant's report of independent activities of daily living including self-care and ability to care for two minor children.

(A.R. 19-20, 26).

Generally, the ALJ discounted Plaintiff's subjective complaints as being inconsistent with the medical evidence and her other statements. Plaintiff's challenges the ALJ's decision as not being specific enough, arguing that the ALJ merely summarized the record without explaining

what evidence contradicted Plaintiff's complaints. (ECF No. 26, p. 22). The Court disagrees because the ALJ's conclusion—that Plaintiff's subjective were inconsistent with the record evidence—cannot be viewed in isolation. Rather, in summarizing the record, the ALJ added commentary calling into question Plaintiff's credibility. For example, the ALJ noted that, although Plaintiff stated that an aunt helped her care for children on a daily basis, "she did not mention such help in her 2018 Function Report." (A.R. 20). Additionally, although she wrote that she was never terminated from employment, she later testified that she was let go from a job. (*Id.*). And, although she wrote that she did not use an assistive device to ambulate, she testified at the hearing that she uses a cane but it was not prescribed. (*Id.*). Accordingly, the ALJ's summation of Plaintiff's subjective complaints and the record evidence was interlaced "with findings sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.

However, the Court does find error regarding the ALJ's reasoning for discounting one aspect of Plaintiff's subjective complaints—the debilitating effects suffered from her migraines. The ALJ discounted these complaints because Plaintiff's testimony and the record evidence revealed that the frequency of Plaintiff's migraines was reduced due to medication. (A.R. 20 ("However, she stated migraines are substantially less now at about one to two per week due to medication use. This is supported by her reports to Dr. Labib in 2019 and 2020."); A.R. 14 ("In follow-up examinations in September and December 2019, she reported[,] "my migraines are under control, not as frequent.")). However, as Plaintiff points out, while she suffered less from her migraines, such "does not support the assertion that they were no longer severe." (ECF No. 30, p. 2). Notably, as the ALJ acknowledged, the same records indicated that Plaintiff still "experiencing 4-5 bad migraines a month." (A.R. 1482; *see* A.R. 14). While these migraines were "not as intense nor as frequent as before," they could still "last[] a day." (A.R. 1485). And although the ALJ was correct to note this improvement in the record, it was error for the ALJ to conclude that such evidence was inconsistent with Plaintiff's testimony. Rather, Plaintiff's

testimony acknowledged that her history of migraines "was very different in the past" because she experienced migraines "almost every day" and now experienced them about once or twice a week, with them lasting from a few hours to more than a day. (A.R. 54).

Given that the records relied on by the ALJ regarding Plaintiff's migraines do not contradict her testimony, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony specifically regarding her migraines.

### C.  Step Two Determination and RFC Assessment

Relatedly, Plaintiff argues that the ALJ failed to properly evaluate the limiting effects of her migraines[3] and failed to include appropriate limitations in the RFC. (ECF No. 26, p. 10, 21).

If a claimant has a medically determinable impairment ("MDI"), the ALJ must determine "whether [the] impairment(s) is severe," which is referred to as Step Two. 20 C.F.R. § 404.1521. A "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1522(b). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. 96-3(p) (1996)).

The Ninth Circuit has provided the following guidance regarding whether medically determinable impairments are severe under Step Two:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that

---

[3] The Court notes that Plaintiff, to a lesser degree, also argues that the ALJ failed to consider the limiting effects of her cardiovascular issues and diabetes with peripheral neuropathy. However, as the Court finds Plaintiff's argument as to her migraines dispositive of this issue, it declines to reach secondary issues, which they parties remain free to raise as they deem appropriate on remand at the administrative stage.

> "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985). Step two, then, is "a de minimis screening device [used] to dispose of groundless claims," *Smolen,* 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85–28. Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Webb did not have a medically severe impairment or combination of impairments. *See also Yuckert,* 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")

*Id.* at 686–687. Additionally, the Supreme Court has stated, "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert,* 482 U.S. 137, 153 (1987).

Regarding Plaintiff's migraines, the ALJ provided the following reasoning for concluding that they were not a severe impairment:

> With respect to migraines, she testified migraines are substantially less now at about one to two per week due to medication use. In February 2016, the claimant reported having frequent migraine headaches and radiating pain from the neck to the left shoulder. However, cervical spine imaging taken in 2016 was negative. (22F/84). X-ray from November 2015 showed moderate degenerative changes and some loss of lordosis. (22F/93, 99). She had full range of motion and no neurological deficits. She had 5/5 motor strength through the grips and plantar flexors. Romberg was "slightly wobbly" and deep tendon reflex at the upper extremities was equivocal to the right. (22F/93). She was referred to physical therapy for treatment. (22F/89).
>
> Treatment notes from 2017 noted migraines were more controlled on amitriptyline. (5F/36-38). She also reported use of medical marijuana for migraines and pain. (4F/5; 9F; 20F/1). In March 2018, she reported having three to four migraine headaches per month. During this period, the claimant reported she had lost 34 pounds in five months with diet changes and increase in exercise. (5F/36). Her body mass index was 39.7 at 253 pounds. The claimant reported to neurologist Dr. Labib, MD, in 2018 that she took Topamax but not sumatriptan for an unknown reason. (13F). She reported having 1-2 migraines per week lasting an average of two days. She reported no longer having "week long" migraines. She was

>encouraged to take sumatriptan at the onset of the migraine and continue use of Topamax. (13F/4; 19F/9). In May 2020 follow-up treatment with Dr. Labib, the claimant reported having only "a couple migraines here and there" with the last one being the week prior. (27F/2). She reported still taking Topamax daily which is helpful and having about 4-5 "bad migraines a month." Although prescribed sumatriptan, she did not report taking it. Yet, she reported taking it with excellent results during a June 2019 incident. (27F/15). In follow-up examinations in September and December 2019, she reported[,] "my migraines are under control, not as frequent." (27F/5, 8). She continued to be prescribed daily use of Topamax and based on her testimony; this condition is largely under control.

(A.R. 29).

Essentially, the ALJ concluded that Plaintiff's migraines were not a severe impairment because the record evidence indicated that they were improved. However, consistent with the discussion of Plaintiff's migraines above, the fact that Plaintiff's migraines were better does not provide substantial evidence to conclude that they had no more than a minimal effect on her ability to work. Accordingly, the ALJ's decision to deem Plaintiff's migraines non-severe is unsupported by substantial evidence.

This brings the Court to Plaintiff's final argument, which challenges the ALJ's RFC determination. A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions and the record as a whole. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Smith v. Saul*, No. 1:18-CV-01614-GSA, 2020 WL 2611680, at *5 (E.D. Cal. May 22, 2020) (rejecting "the residual functional capacity determination for lack of compliance with applicable law and insufficient support from the record as a whole"). In reviewing findings of fact with respect to such determinations, this Court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C.

1  § 405(g).

2  Here, the ALJ concluded as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally bend, squat, and kneel. She cannot climb ladders or scaffolds. She can frequently but not constantly handle and finger bilaterally. She can occasionally use foot or leg controls. She can have no exposure to hazardous work areas or temperature extremes.

(A.R. 19).

Because the ALJ concluded that Plaintiff's migraines were non-severe and discounted her subjective complaints about them, the RFC does not properly reflect the limitations concerning Plaintiff's migraine symptoms, such as Plaintiff's testimony that weekly migraines could cause her to be bed bound for hours or more than a day. (A.R. 54). And this failure to consider these limitations cannot be said to be harmless because the vocational expert testified that similar limitations—missing up to ten days of a normal work month or being off-task from laying down from two to three hours in a normal workday—would not be permitted in any job. (A.R. 72). Accordingly, the ALJ's RFC assessment is not supported by substantial evidence.

### D. REMEDY

Plaintiff concludes by stating that this case should remanded for further proceedings including a new hearing and new ALJ decision. (ECF No. 26, p. 23). Defendant argues that this Court should affirm. (ECF No. 29, p. 14).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test, with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met,

the Court may still remand when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, after review of the record as whole, and given that Plaintiff does not request an award of benefits, the Court concludes that a remand for further proceedings is appropriate.

## II.   CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   **May 4, 2022**          /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE